UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NATHAN TOOMEY,

Plaintiff,

v.

DAKOTA COUNTY; JAMIE JANVRIN, *in her individual and official capacities*; AMANDA REIMAN, *in her individual and official capacities*; and VIRGINIA OLSON, *in her individual and official capacities*,

Defendants.

Case No. 25-cv-1214 (LMP/ECW)

**ORDER GRANTING IN PART AND DENYING IN PART DAKOTA COUNTY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Steven J. Meshbesher and Richard E. Student, **Meshbesher & Associates, P.A., Minneapolis, MN**, for Plaintiff.

William M. Topka, **Dakota County Attorney's Office, Hastings, MN**, for Defendant Dakota County.

Sarah M. Hoffman, **Bassford Remele, Minneapolis, MN**, for Defendants Jamie Janvrin and Virginia Olson.

Joseph F. Lulic, **Brownson PLLC, Minneapolis, MN**, for Defendant Amanda Reiman.

Plaintiff Nathan Toomey ("Toomey") initiated this suit against Defendants Dakota County (the "County"), Jamie Janvrin ("Janvrin"), Amanda Reiman ("Reiman"), and Virginia Olson ("Olson"), alleging that Defendants provided him inadequate medical care while he was detained at the County's jail. *See* ECF No. 1. Toomey brings a Section 1983 claim against Janvrin, Reiman, and Olson; a *Monell* claim and a negligence claim against the County; and a medical malpractice claim against all Defendants. *See id.* ¶¶ 41–73. The

1

County now moves for judgment on the pleadings. *See* ECF No. 25. For the following reasons, the County's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

On October 29, 2021, Toomey was booked into the County's jail on shoplifting charges. ECF No. 1 ¶ 14; ECF No. 6 ¶ 2. In connection with his booking, Janvrin—a nurse at the jail—completed a chemical withdrawal questionnaire for Toomey, which noted that Toomey's drug use included daily suboxone and fentanyl use and that his withdrawal symptoms included nausea, vomiting, and diarrhea. ECF No. 1 ¶ 15. Based on that questionnaire, Toomey was placed under chemical withdrawal monitoring. *Id.* ¶ 16.

Over the next few days, Toomey allegedly suffered "severe withdrawal symptoms" that left him in "obvious medical distress." *See id.* ¶¶ 17–28. However, Toomey alleges that Janvrin and two other medical professionals at the jail who treated him—Reiman and Olson—failed to recognize the severity of Toomey's withdrawal symptoms and failed to provide him with adequate care. *Id.* ¶¶ 19–22, 24–27, 33–37. Eventually, on November 4, 2021, Toomey was found unresponsive in his cell. *Id.* ¶ 29. Toomey was transferred to Regions Hospital in St. Paul, where he was diagnosed with dehydration, acute kidney failure, acidosis, acute respiratory failure with hypoxia, and pneumonitis due to vomit and food aspiration. *Id.* ¶ 32. Toomey required intensive inpatient treatment at Regions Hospital and remained there until November 9, 2021. *Id.*

Toomey brought this lawsuit on April 4, 2025. *See generally id.* In his complaint, Toomey recognizes that Janvrin, Reiman, and Olson were independent contractors and not employees of the County. *Id.* ¶¶ 2, 13; *see* ECF No. 6 ¶¶ 7–10. Janvrin, Reiman, and Olson

were formally employed by MEnD Correctional Care, PLLC ("MEnD"), "and were working pursuant to a contract for jail medical services in effect between MEnD" and the County. ECF No. 1 ¶ 2. MEnD declared bankruptcy in November 2022. *Id.* ¶ 13.

Toomey alleges four claims. *First*, Toomey brings a Section 1983 claim against Janvrin, Reiman, and Olson for the "deliberate denial of medical treatment" in violation of Toomey's Fourteenth Amendment rights. *Id.* ¶¶ 41–48. That claim is not at issue in this motion.

*Second*, Toomey brings a *Monell* claim against the County. *Id.* ¶¶ 49–54. Toomey alleges that the County had a "custom, pattern, and practice . . . of denying adequate and necessary medical treatment to detainees, including detainees experiencing severe withdrawal symptoms." *Id.* ¶ 50. Specifically, Toomey alleges that the County knew that: (1) "MEnD could not be relied upon to provide constitutionally [] mandated medical treatment to detainees in its custody"; (2) "MEnD failed to provide overnight nursing coverage 'more often than not'"; (3) County correctional officers, "rather than medical professionals employed by MEnD, were attempting to perform medical-related tasks for detainees"; and (4) "MEnD did not maintain an adequate process, staffing, or resources necessary to dispense critical medications, including controlled medications prescribed for opioid withdrawal." *Id.* ¶ 51. Toomey also alleges that more than 20 County correctional officers who were supposed to be monitoring his withdrawal "took no steps to intervene to provide medical treatment" to Toomey. *Id.* ¶ 52.

*Third*, Toomey brings a state-law medical malpractice claim against all Defendants. *Id.* ¶¶ 55–66. Relevant to this motion, Toomey alleges that the "County owed a

3

nondelegable duty to provide constitutionally mandated medical treatment to Mr. Toomey while he was a detainee at the jail, regardless of whether the individual medical professionals involved were formally the County's employees, independent contractors, or employees of independent contractors." *Id.* ¶ 66.

*Fourth*, Toomey brings a standalone negligence claim against the County. *Id.* ¶¶ 67–73. Toomey alleges that the County knew that he was in medical distress but that it "failed to provide him access to necessary medication and treatment at an appropriate healthcare facility." *Id.* ¶ 69. Toomey also alleges that the "County knew MEnD could not be relied upon generally to provide adequate medical services to detainees suffering serious medical conditions." *Id.* ¶ 70.

After answering the complaint and asserting crossclaims against Janvrin, Reiman, and Olson, ECF No. 6, the County moved for judgment on the pleadings as to Toomey's three claims asserted against the County, *see* ECF No. 25. Olson and Janvrin take no position on the County's motion, although Reiman opposes the County's motion. ECF Nos. 34, 36.

## ANALYSIS

The Court evaluates a Rule 12(c) motion for judgment on the pleadings under the same standards applicable to a Rule 12(b)(6) motion to dismiss. *See Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022). At this stage of the proceedings, the Court must "accept as true all of the facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Glover v. Merck & Co.*, 345 F. Supp. 2d 994, 996 (D. Minn. 2004). But the complaint must

4

nevertheless "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding the motion, the Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

## I. Count II: *Monell* Claim

A municipality cannot be held liable for a constitutional violation under Section 1983 solely because it employs a tortfeasor. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, under *Monell*, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016).

Although it is not clear on which theory of *Monell* liability Toomey relies, it appears that he relies on the "unofficial custom" theory. *See* ECF No. 1 ¶ 50 (alleging that the County "with deliberate indifference to the rights of citizens, maintained and permitted a custom, pattern, and practice"); *id.* ¶ 55 (alleging that Toomey was injured "[a]s a direct and proximate result of such customs, patterns and/or practices"); ECF No. 28 at 8 (the County's briefing, understanding Toomey to be alleging an unofficial custom).

5

"A municipal custom is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law." *Russell v. Hennepin County*, 420 F.3d 841, 849 (8th Cir. 2005) (citation modified). That custom must encompass "a widespread and persistent pattern of unconstitutional misconduct . . . policymakers were either deliberately indifferent to or tacitly authorized." *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 363 (8th Cir. 2023) (citation omitted). The plaintiff must also allege that the unofficial custom was the "moving force behind the constitutional violation." *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (citation omitted).

The County argues dismissal of the *Monell* claim is appropriate because, in its view, Toomey has only alleged unconstitutional acts by the County's independent contractors, which cannot support a *Monell* claim. ECF No. 28 at 9–11. The County is legally and factually incorrect. Legally, the unconstitutional acts of an independent contractor who provides medical care to inmates can support a *Monell* claim. *See Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (quoting *West v. Atkins*, 487 U.S. 24, 56 (1988)) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody."); *Olson v. Sherburne County*, No. 07-cv-4757 (JNE/JJG), 2009 WL 3711548, at *6 (D. Minn. Nov. 3, 2009). And factually, Toomey alleges that numerous correctional officers witnessed his medical distress and failed to render adequate aid. ECF No. 1 ¶¶ 18, 26–27, 29, 52. Toomey also alleges that the County itself acted unconstitutionally by contracting with MEnD despite being on notice that MEnD provided inadequate care to inmates. *See id.* ¶ 51. Toomey's allegations against

6

the County's employees and independent contractors may therefore support a *Monell* claim.

The County's next argument is that the complaint does not adequately plead the pervasiveness of an "unofficial custom." ECF No. 28 at 11–13. The Eighth Circuit has not drawn a bright line for how many incidents of unconstitutional acts suffice to allege an unofficial custom under *Monell*. *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 841 (D. Minn. 2021). But this much is clear: "An unconstitutional custom or usage cannot arise from a single act." *Bolderson*, 840 F.3d at 986.

Toomey's complaint identifies only one incident of an unconstitutional act based on the County's alleged custom of failing to provide adequate medical care to pretrial detainees—his own experience. ECF No. 1 ¶¶ 49–54. He has identified no other incidents of a pretrial detainee, let alone a pretrial detainee experiencing opioid withdrawal symptoms, receiving inadequate medical care at the County's jail. And although Toomey alleges that the County has a "custom, pattern, and practice . . . of denying adequate and necessary medical treatment to detainees, including detainees experiencing severe withdrawal symptoms," *id.* ¶ 50, this allegation boils down to a "legal conclusion couched as a factual allegation," which the Court is not "bound to accept as true" at the pleading stage, *Iqbal*, 556 U.S. at 678 (citation omitted); *see D.B. v. Hargett*, No. 13-cv-2781 (MJD/LIB), 2014 WL 1371200, at *5–6 (D. Minn. Apr. 8, 2014) (finding that the allegation that a school district "maintained a policy, pattern, practice, and/or custom of inadequately and improperly training, supervising, and disciplining school bus drivers" was too conclusory to plausibly state a *Monell* claim).

Toomey also points to his allegations that the County contracted with MEnD despite being aware that MEnD maintained insufficient staffing and resources and provided inadequate medical care to inmates. *See* ECF No. 1 ¶ 51. But Toomey has not alleged that these deficiencies injured anyone but himself. "Before a municipality can be held liable" under *Monell*, "there must be an unconstitutional act." *Russell*, 420 F.3d at 846. Although Toomey raises purported problems with MEnD of which the County was allegedly aware, he has not alleged that those problems have unconstitutionally injured anyone but himself. Because a single incident of unconstitutional misconduct does not sufficiently demonstrate the pervasiveness of an unofficial custom under *Monell*, Toomey's *Monell* claim must be dismissed. *Bolderson*, 840 F.3d at 986.

Toomey's *Monell* claim fails for a second reason. To plausibly allege an "unofficial custom" theory of *Monell* liability, a plaintiff must allege that policymakers "were either deliberately indifferent to or tacitly authorized" the unconstitutional conduct. *Leonard*, 59 F.4th at 363. "Notice is the touchstone of deliberate indifference" for a *Monell* claim. *Samaha v. City of Minneapolis*, 525 F. Supp. 3d 933, 943 (D. Minn. 2021) (citation omitted). Here, although Toomey alleges that the County was aware of several red flags with the quality of care provided by MEnD, Toomey does not allege *when* the County became aware of those red flags. ECF No. 1 ¶ 51. If the County became aware of MEnD's shortcomings only after Toomey's detention, then Toomey cannot show "a persistent, widespread pattern of unconstitutional conduct *of which officials have notice and subsequently react* with deliberate indifference or tacit authorization." *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 651 (8th Cir. 2025) (emphasis added) (citation omitted);

8

*see Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). The complaint provides no indication that the County had any such notice of MEnD's shortcomings at the time of Toomey's detention in October 2021, which is yet another reason why Toomey's *Monell* claim must be dismissed.

## II.    Count III: Medical Malpractice

The County argues that the Minnesota Municipal Tort Liability Act ("MTLA") prohibits finding the County liable for the medical malpractice of its independent contractors. ECF No. 28 at 13–15. The MTLA, Minn. Stat. § 466.01 *et seq.*, governs the tort liability of Minnesota municipalities like the County. *See Doyle v. City of Roseville*, 524 N.W.2d 461, 462 (Minn. 1994); Minn. Stat. § 466.01, subd. 1 (including a "county" within the definition of a "municipality"). Under the MTLA, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function."[1] Minn. Stat. § 466.02. However, the MTLA explicitly excludes "independent contractors" from the definition of an "employee, officer, or agent." Minn. Stat. § 466.01, subd. 6.

Toomey's medical malpractice claim is based entirely on the conduct of Janvrin, Reiman, and Olson. ECF No. 1 ¶¶ 55–66. And Toomey does not dispute—and indeed, he affirmatively alleges—that Janvrin, Reiman, and Olson were independent contractors of

---

[1]    "A medical malpractice action is based on principles of tort liability . . . ." *Molloy v. Meier*, 679 N.W.2d 711, 717 (Minn. 2004).

the County.[2] *Id.* ¶¶ 2, 13. The contract between the County and MEnD, which is attached to the County's answer, confirms this allegation, stating that MEnD is an independent contractor and that nothing "in [the] Contract is intended to create an employer and employee relationship between the County and [MEnD]." ECF No. 6-1 at 3. By its plain terms, the MTLA precludes Toomey's attempt to bring a medical malpractice claim against the County based on the conduct of its independent contractors. Minn. Stat. § 466.01, subd. 6; *see Sivels v. Ramsey County*, No. 23-cv-894 (DWF/TNL), 2024 WL 3823012, at *5 (D. Minn. Aug. 14, 2024) (dismissing negligence claim against a county under the MTLA for the acts of the county jail's independent contractor).

To avoid that straightforward conclusion, Toomey argues that because the duty to provide inmates with medical care is "nondelegable as a matter of federal constitutional law," the MTLA does not apply. ECF No. 33 at 8. Toomey offers no relevant authority for that argument. Instead, he cites cases arising under Section 1983 and *Monell*. *See West*, 487 U.S. at 48; *Crooks*, 872 F.2d at 804.[3] But whether Toomey can pursue a Section 1983

---

[2] Reiman's answer to the County's crossclaims states that she was "an employee of Dakota County." ECF No. 17 ¶ 3. But that answer contradicts Reiman's answer to Toomey's complaint, in which she admits paragraph 2 of Toomey's complaint, which alleges that she was an "employee[] of MEnD Correctional Care, PLLC ("MEnD"), and w[as] working pursuant to a contract for jail medical services in effect between MEnD and Defendant Dakota County." ECF No. 12 ¶ 2. Reiman's passing reference to being an employee of the County—which contradicts her answer to Toomey's complaint—does not plausibly allege that she is an employee of the County for purposes of this motion.

[3] Toomey also cites *Brenner v. Asfeld*, No. 18-cv-2383 (NEB/ECW), 2019 WL 2358451, at *9 (D. Minn. June 4, 2019), in which the court concluded that the plaintiff had adequately alleged a county's vicarious liability for the medical malpractice of the county jail's independent contractors. However, the court in *Brenner* took pains to note that the

10

claim against the County is a completely different question than whether he can pursue a state-law tort claim against the County. The latter claim requires Toomey to satisfy the strictures of the MTLA, which he has not done. *See Sivels*, 2024 WL 3823012, at *5.

Toomey further argues that the Minnesota Supreme Court "held that the negligent performance by an independent contractor of a municipality's nondelegable duty creates liability for the municipality." ECF No. 33 at 8 (citing *Westby v. Itasca County*, 290 N.W.2d 437, 438 (Minn. 1980)). Toomey's argument underscores the importance of researching legislative history. It is true that *Westby* held that the negligent performance by an independent contractor of a municipality's nondelegable duty creates liability for the municipality. 290 N.W.2d at 438. Toomey is also correct that, at least as a matter of federal constitutional law, a county's duty to provide inmates with medical care is nondelegable. *See West*, 487 U.S. at 48. But at the time *Westby* was decided in 1980, the MTLA did *not* prohibit suits against a municipality based on the tortious conduct of the municipality's independent contractor; in fact, the "independent contractor" exclusion in the MTLA was not enacted until 1988. *See* Laws of Minnesota 1988, ch. 708, § 7. Therefore, to the extent that *Westby* held that a municipality is liable for the torts of its independent contractor, that holding has been abrogated by Minn. Stat. § 466.01, subd. 6.

---

county "ha[d] not advanced arguments that it [was] not either directly or vicariously liable under this claim." *Id.* Here, the County explicitly advances that argument, and the Court finds it meritorious. Toomey's supplemental authority is even further afield of this case, as one case did not analyze the independent-contractor exception to the MTLA, *Schmitz v. City of Farmington*, No. A06-1795, 2007 WL 2107408 (Minn. Ct. App. Jul. 24, 2007), and the other case did not deal with independent contractors at all, *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560 (Minn. 2001).

Finally, Toomey argues that Janvrin, Reiman, and Olson were the County's agents under an apparent authority theory. ECF No. 33 at 8–9. Even if that were true, the fact remains that Janvrin, Reiman, and Olson are indisputably independent contractors. And regardless of the agency relationship between the County and Janvrin, Reiman, and Olson, the MTLA explicitly carves out "independent contractors" from the definition of "employee, officer, or agent." Minn. Stat. § 466.01, subd. 6. The MTLA accordingly bars Toomey from pursuing his medical malpractice claim against the County.

### III. Count IV: Negligence

The County finally argues that Count IV is simply a repackaged medical malpractice claim against the County, which must be dismissed for the same reasons as Count III. ECF No. 28 at 15–17. Construing the pleadings in the light most favorable to Toomey, *Glover*, 345 F. Supp. 2d at 996, the Court discerns two distinct theories of negligence pleaded in Count IV.

The first theory is that the County is liable for the medical malpractice of Janvrin, Reiman, and Olson. ECF No. 1 ¶ 69 (alleging that the County "failed to provide [Toomey] access to necessary medication and treatment"). For the reasons discussed above, that claim is barred by the MTLA.

The second theory is that the County is liable for its correctional officers' failure to render adequate aid to Toomey. *See id.* ¶ 70 (alleging that Toomey's medical condition "was observed by more than 20 Dakota County correctional officers over the course of six days"). Elsewhere in the complaint, Toomey further alleges that "more than twenty Dakota County correctional officers, who were supposedly tasked with formally monitoring Mr.

Toomey's withdrawal, were aware he suffered a serious medical condition, and were aware the medical treatment he had been receiving from the individual Defendants was woefully inadequate," and yet "took no steps to intervene to provide medical treatment." *Id.* ¶ 52.

The MTLA is not a bar to holding the County liable for the tortious acts of its own employees, such as its correctional officers. *See Watson ex rel. Hanson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 414 (Minn. 1996). And although the conduct of the County's correctional officers is thinly pleaded, the complaint contains enough factual matter at this stage to plausibly allege negligence by the County's correctional officers.

To establish a negligence claim under Minnesota law, Plaintiffs must allege: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury. *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002). As for duty, the County and its employees clearly have a duty to provide medical treatment to inmates. *See, e.g.*, Minn. Stat. § 641.15; *Dadd v. Anoka County*, 827 F.3d 749, 756 (8th Cir. 2016) ("It is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody."). The complaint also plausibly alleges that the correctional officers breached their duty to render adequate medical aid to Toomey and that the officers witnessed Toomey languish in severe medical distress for nearly a week. *See* ECF No. 1 ¶ 18 (officers witnessing Toomey having seizures on October 30), ¶ 26 (officers witnessing Toomey unresponsive on November 3), ¶ 27 (officer advised by Toomey that he was experiencing seizures and was vomiting on November 3); ¶ 29 (officer witnessing Toomey unresponsive on November 4). In fact, Toomey's medical distress prompted correctional officers to seek medical assistance for him on numerous occasions. *See id.*

13

Toomey alleges that this medical assistance was inadequate, that the officers knew this, and that they "took no steps to intervene to provide medical treatment." *Id.* ¶ 52. Finally, Toomey has adequately pleaded injuries resulting from allegedly inadequate medical care and that those injuries would have been foreseeable from inadequate medical care. *Id.* ¶¶ 37–40 (alleging that inadequate medical care caused Toomey "to deteriorate for six days until he had nearly died of dehydration and had sustained completely preventable physical injuries and pain and suffering").

The allegations here are similar to the facts of *Erickson v. Pope County*, No. 19-cv-3061 (SRN/LIB), 2022 WL 17411091 (D. Minn. May 6, 2022). In that case, a pretrial detainee was incarcerated at a county jail and demonstrated symptoms of alcohol withdrawal. *Id.* at *1. The next day, the detainee experienced a seizure and died due to complications from chronic alcoholism. *Id.* The detainee's next of kin brought suit against the county and its correctional officers, alleging the detainee's wrongful death from negligence. *Id.* At summary judgment, the court held there were genuine disputes of material fact as to whether the detainee's death was the result of the county's negligence. *Id.* at *43. Specifically, the court noted that (1) the detainee displayed obvious signs of withdrawal, (2) the detainee complained on several occasions about his medical ailments, and (3) there was evidence in the record that correctional officers knew of the detainee's alcoholism. *Id.* The court found that this evidence precluded summary judgment for the county on the detainee's negligence claim.

The same can be said here, and with greater force, since this case is only at the pleadings stage. Toomey alleges that he displayed obvious signs of opioid withdrawal, that

he complained of his medical issues, that the County's correctional officers were aware of all of this, and yet failed to provide adequate care, leading to Toomey's injuries. ECF No. 1 ¶¶ 18, 26–27, 29, 52. These allegations sufficiently plead a negligence claim against the County.

The County responds that the complaint "lists no less than four discrete instances where County correctional deputies contacted MEnD medical staff when they witnessed Plaintiff in potential distress." ECF No. 28 at 16. That is a fair point. And certainly one relevant to whether the County's correctional officers satisfied their duty to render adequate medical aid to Toomey. But Toomey alleges that the correctional officers should have done *more*, and whether failing to do more was a breach of the correctional officers' duty to Toomey is a factual question properly resolved after discovery. *See Block v. Target Stores, Inc.*, 458 N.W.2d 705, 712 (Minn. Ct. App. 1990) ("Questions of negligence and proximate cause are generally factual matters for a jury to decide."). This theory of negligence against the County may therefore proceed.[4]

## IV.   Dismissal With or Without Prejudice

Toomey requests that any dismissal of his claims be without prejudice, ECF No. 33 at 10–12, while the County requests dismissal with prejudice, ECF No. 41 at 9–10.[5]

---

[4]   The Court could also see how Count IV could be construed as a claim for negligent selection of an independent contractor. *See Alonzo v. Menholt*, 9 N.W.3d 148, 157 (Minn. 2024). At oral argument, however, Toomey disclaimed reliance on such a theory of liability. The Court therefore does not address that theory of liability.

[5]   Although Janvrin and Olson took no position on the merits of the County's motion, they did join Toomey's request to dismiss any claims against the County without prejudice. ECF No. 36 at 1.

15

"Courts ultimately have discretion to decide between a dismissal with prejudice and one without prejudice." *Harris v. Medtronic Inc.*, 729 F. Supp. 3d 869, 883 (D. Minn. 2024). Dismissals at the pleading stage are generally without prejudice, unless there is "evidence of persistent pleading failures," *Finnegan v. Suntrust Mortg.*, 140 F. Supp. 3d 819, 832 (D. Minn. 2015) (citation omitted), or unless "a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading," *Newman v. JP Morgan Chase Bank, N.A.*, 81 F. Supp. 3d 735, 746 n.7 (D. Minn. 2015).

Toomey has not had an opportunity to amend his complaint and therefore has not demonstrated persistent pleading failures or incurable defects in his complaint. *See Finnegan*, 140 F. Supp. 3d at 832. Accordingly, the Court will dismiss Toomey's claims without prejudice.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The County's Motion for Judgment on the Pleadings (ECF No. 25) is **GRANTED IN PART**. Counts II and III of the Complaint (ECF No. 1) against the County are **DISMISSED WITHOUT PREJUDICE**.

2. In all other respects, the County's motion is **DENIED**.

Dated: August 8, 2025          *s/Laura M. Provinzino*
                                Laura M. Provinzino
                                United States District Judge