# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NATHAN TOOMEY, | Case No. 25-cv-1214 (LMP/ECW) |
| Plaintiff, | |
| v. | |
| DAKOTA COUNTY; JAMIE JANVRIN, *in her individual and official capacities*; AMANDA REIMAN, *in her individual and official capacities*; and VIRGINIA OLSON, *in her individual and official capacities*, | **ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT** |
| Defendants. | |

Steven J. Meshbesher and Richard E. Student, **Meshbesher & Associates, P.A., Minneapolis, MN**, for Plaintiff.

William M. Topka, **Dakota County Attorney's Office, Hastings, MN**, for Defendant Dakota County.

Sarah M. Hoffman, **Bassford Remele, Minneapolis, MN**, for Defendants Jamie Janvrin and Virginia Olson.

Joseph F. Lulic, **Brownson PLLC, Minneapolis, MN**, for Defendant Amanda Reiman.

Plaintiff Nathan Toomey initiated this suit against Defendants Dakota County, Jamie Janvrin, Amanda Reiman, and Virginia Olson, alleging that they provided him inadequate medical care while he was detained at the County's jail. *See* ECF No. 1. The County moved for judgment on the pleadings, ECF No. 25, which the Court granted in part by dismissing Toomey's claims against the County except for a negligence claim based on the actions of the County's correctional officers, *see* ECF No. 43. The County and Toomey

1

have now reached a settlement and seek judicial approval of that settlement.  ECF No. 45.

Reiman does not object to the proposed settlement, but Janvrin and Olson object to two

aspects of the proposed settlement.  *See* ECF Nos. 47, 52.  For the following reasons, the

Court approves the proposed settlement over Janvrin's and Olson's objections.

## BACKGROUND[1]

Toomey alleges that while he was detained at the County's jail, he received

inadequate medical care from County personnel and from Janvrin, Reiman, and Olson, who

were independent contractors providing medical services at the County's jail.  ECF No. 1

¶¶ 14–28, 33–37.  After answering the complaint and asserting crossclaims against Janvrin,

Reiman, and Olson, ECF No. 6, the County moved for judgment on the pleadings as to

Toomey's claims against the County, *see* ECF No. 25.  The Court granted the County's

motion in part, dismissing all claims against the County except for a negligence claim based

on the actions of the County's correctional officers.  *See* ECF No. 43.

The County and Toomey have now reached a settlement to resolve Toomey's claims

against the County and the County's crossclaims against Janvrin, Reiman, and Olson.  ECF

No. 49-3.  The County agrees to pay Toomey $30,000 in exchange for a *Pierringer* release,

which is an agreement that allows a plaintiff to settle with some, but not all, defendants,

and releases them from further liability while the plaintiff pursues his suit against the non-

settling defendants.  *See Frey v. Snelgrove*, 269 N.W.2d 918, 921–22 (Minn. 1978) (citing

---

[1]     The Court incorporates here the more complete factual background provided in the Court's order on the County's motion for judgment on the pleadings.  *See* ECF No. 43 at 2–4.  The Court describes here only the facts necessary to decide the present motion.

2

*Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963)); *see also* ECF No. 49-3.  The County

and Toomey now request judicial approval of the proposed settlement pursuant to Minn.

Stat. § 466.08, which requires that a settlement approved by the "governing body of any

municipality" to "settle tort claims against the municipality for damages" that exceeds

$10,000 must be "approved by the district court."  ECF No. 45.  Upon approval of the

proposed settlement, the County and Toomey request that the Court dismiss Toomey's

remaining negligence claim against the County with prejudice and dismiss the County's

crossclaims against Janvrin, Reiman, and Olson with prejudice.  ECF No. 48 at 8.

Reiman does not oppose the proposed settlement, ECF No. 47, but Janvrin and

Olson object to two aspects of the proposed settlement, ECF No. 52.

## ANALYSIS

Ordinarily, the settlement of a lawsuit is "solely in the hands of the parties" and does

not need to be approved by a district court.  *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180,

1189 (8th Cir. 1984).  However, in some "special situations," judicial approval of a

settlement is required.  *Id.*  Here, the parties invoke Minn. Stat. § 466.08, which provides

that when the amount of a settlement between a Minnesota municipality (like the County)

and a plaintiff exceeds $10,000, "the settlement shall not be effective until approved by the

district court."[2]

---

[2]     As an initial matter, it is not clear that the approval process of Minn. Stat. § 466.08
applies to this case in federal court.  The statute provides that a settlement must be
"approved by the district court," which, as a state statute, ostensibly refers to the state
district courts.  Moreover, Toomey's negligence claim against the County falls within the
Court's supplemental jurisdiction, and the *Erie* doctrine, under which federal courts must

When a plaintiff reaches a settlement with only some defendants, and that settlement must be approved by a court, a non-settling defendant generally lacks standing to object to the partial settlement. *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1001–02 (8th Cir. 1990). However, a non-settling defendant may object to a partial settlement when "it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement." *Id.* at 1002 (quoting *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987)). Formal legal prejudice may be present when the settlement purports to strip a non-settling defendant of a legal claim or cause of action. *Id.* However, the fact that a settlement puts a non-settling defendant "at something of a tactical disadvantage in the continuing litigation" is not enough to show formal legal prejudice. *Waller*, 828 F.2d at 584.

Janvrin and Olson have raised two objections to the proposed settlement. ECF No. 52. First, they assert that language in paragraph 5 of the proposed settlement could release their claims against the County and impair their right to present the fault of the County at trial. *Id.* at 2–6. Second, Janvrin and Olson assert that any approval of the proposed settlement should wait until the completion of fact discovery in March 2026 so that Janvrin and Olson can continue to take party discovery from the County. *Id.* at 6–8.

---

apply state substantive law and federal procedural law in diversity cases, applies equally in the context of supplemental jurisdiction over pendent state-law claims. *See Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998). Whether the approval process in Minn. Stat. § 466.08 is a matter of substantive or procedural law is open to reasonable debate. *Cf. Burke v. Smith*, 252 F.3d 1260, 1265–66 (11th Cir. 2001) (holding that state law requiring judicial approval of a settlement of a minor's claims was substantive under *Erie*). However, given that the parties have not raised this issue, this Court will assume—as the parties do—that Minn. Stat. § 466.08 applies to this case.

## I.     Language in Paragraph 5

Janvrin and Olson object to the following language in paragraph 5 of the proposed settlement:

> In further consideration of the terms and conditions of this Agreement, Plaintiff releases and discharges that fraction, portion, or percentage of the total cause of action or claim for damages which shall by trial or other disposition, be determined to be the sum of the fractions, portions, or percentages of comparative fault and/or causal negligence for which the County Releasees are found to be liable to Plaintiff, Janvrin, Olson, Reiman, MEnD, or any other person or entity as a consequence of the Lawsuit or otherwise by operation of law.

ECF No. 49-3 at 2.  Janvrin and Olson are concerned that this language allows Toomey to release "causes of action" or "claims" that Janvrin and Olson may have against the County and may impair their ability to present evidence at trial regarding the proportionate fault of the County.  *See* ECF No. 52 at 4–6.

Janvrin's and Olson's fears are misplaced.  Paragraph 5 contemplates a release only by Toomey, who alone releases the County from the "fraction, portion, or percentage of the total cause of action or claim for damages" that the County may later be found liable to any party.  That language simply encapsulates one element of a *Pierringer* release—namely, to ensure that the County "is liable only for that part of the award which is [its] percentage of causal negligence" and "is relieved from paying more than [its] fair share of the verdict." *Frey*, 269 N.W.2d at 922.  That way, the County "will never pay more than [its] share, because [its] exposure is limited to [its] own percentage of causal negligence—exactly [its] share—attributed to [it] at trial." *Alumax Mill Prods.*, 912 F.2d at 1009 (citation omitted) (alternations in original).  Nothing in the language of paragraph 5 purports to operate as a

release of Janvrin's and Olson's rights because it is only "Plaintiff" who is releasing any "cause of action or claim for damages." ECF No. 49-3 at 2. And, as Janvrin and Olson correctly note, any attempt by Toomey to waive Janvin's and Olson's rights would likely be unenforceable because "the rights of a third party cannot ordinarily be adversely varied by an agreement to which he is not a party or by which he is not otherwise bound." *Pitman Farms v. Kuehl Poultry LLC*, 676 F. Supp. 3d 741, 750 (D. Minn. 2023) (citation omitted) (internal quotation marks omitted).

The rest of the proposed settlement confirms this reading of paragraph 5. For example, the proposed settlement provides that Toomey will indemnify and hold harmless the County "from any claims or liens and costs and expenses for subrogation, contribution, or indemnity made by any and all persons or parties, and arising out of Plaintiff's damages." ECF No. 49-3 at 3. Reading the release and indemnifications provisions together—as the Court must, *see Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525–26 (Minn. 1990))—it appears that the proposed settlement operates as an ordinary *Pierringer* release by releasing the County from the action, discharging the "part of the cause of action equal to that part attributable to the [County's] causal negligence," and requiring Toomey "to indemnify the [County] from any claims of contribution made by [Janvrin or Olson] and to satisfy any judgment obtained from [Janvrin or Olson] to the extent the [County has] been released." *Frey*, 269 N.W.2d at 920 n.1. In fact, if Janvin's and Olson's interpretation of paragraph 5 were correct, and Toomey could simply release all claims that Janvrin and Olson have against the County, then the indemnification provision of the proposed settlement would be rendered superfluous, since there would be

6

no claims against the County on which indemnification would be sought.  Given that Minnesota courts "interpret contract language to give effect to all terms," *Econ. Premier Assurance Co. v. W. Nat'l Mut. Ins. Co.*, 839 N.W.2d 749, 756 (Minn. Ct. App. 2013), Janvrin's and Olson's reading of paragraph 5 must be rejected because it would violate that interpretative rule.

Finally, if there were any doubt about the scope of the proposed settlement, the proposed settlement itself states that it is to "be construed in accordance with the principles set forth in" *Pierringer* and *Frey.*  ECF No. 49-3 at 3.  This language "conclusively establishes that the parties intended the settlement agreement to be a *Pierringer* release." *Alumax Mill Prods.*, 912 F.2d at 1009 (evaluating similar language).  And with a *Pierringer* release, the non-settling defendants' rights to assert claims and evidence against the settling defendant is unaffected,[3] as the non-settling defendants "are free to try and shift all, or as much as they can, of the negligence blame onto the settling defendant." *See Bunce v. A.P.I., Inc.*, 696 N.W.2d 852, 856 (Minn. Ct. App. 2005).  Indeed, both the County and Toomey disclaim any attempt to stymie Janvrin's and Olson's rights against the County.  *See* ECF No. 54 at 6 ("[Paragraph 5] does not affect [Janvrin's and Olson's] rights in this case either. Janvrin and Olson can still make whatever claims they may want against the County; Plaintiff just agreed to indemnify the County for them."); ECF No. 56.

---

[3]   There is one exception: as Janvrin and Olson accept, ECF No. 52 at 4, a *Pierringer* release cuts off a non-settling defendant's ability to seek contribution or indemnification from the settling defendant. *See Alumax Mill Prods.*, 912 F.2d at 1009–11.

Accordingly, the Court does not—and will not—construe paragraph 5 of the proposed settlement to impair the rights, defenses, and claims that Janvrin, Reiman, and Olson may assert against Toomey or the County consistent with an ordinary *Pierringer* release. With that understanding (which the County and Toomey appear to share), the Court sees no "formal legal prejudice" to Janvrin and Olson from paragraph 5 of the proposed settlement, which requires overruling their objection to that provision of the proposed settlement. *Alumax Mill Prods.*, 912 F.2d at 1002.

## II. Staying Approval of the Settlement Until Completion of Fact Discovery

Janvrin and Olson next observe that if the settlement is approved and the County is dismissed from this action, the process for obtaining evidence from the County will change. Specifically, Janvrin and Olson assert that although the County as a non-party would still be subject to providing documents and witness testimony in response to a subpoena, the County would no longer be required to respond to written interrogatories. ECF No. 52 at 6–8. Janvrin and Olson explain that they have not yet had the opportunity to serve written interrogatories on the County but would like the opportunity to do so before the end of fact discovery. *Id.*

Janvrin and Olson lack standing to object to the timing of the settlement because they do not demonstrate "formal legal prejudice" from their inability to serve written interrogatories. *Alumax Mill Prods.*, 912 F.2d at 1002. As Janvrin and Olson acknowledge, ample avenues to obtain discovery from the County will continue to exist through the Rule 45 subpoena power. The fact that Janvrin and Olson may be "at something of a tactical disadvantage" in losing access to one form of written discovery is not enough to

show formal legal prejudice. *Waller*, 828 F.2d at 582. Indeed, the objection that Janvrin and Olson make could be made to any *Pierringer* release, as such settlements typically contemplate the dismissal of the settling party (and the non-settling defendants' consequent loss of party discovery mechanisms as against the settling defendant). *See Bunce*, 696 N.W.2d at 855 ("Ordinarily, the settling tortfeasor is dismissed with prejudice from the lawsuit . . . ."). More to the point, the time to take fact discovery has been ongoing for over nine months and is close to completion, *see* ECF No. 32, so Janvin's and Olson's concern about losing the opportunity to serve interrogatories is more appropriately attributed to their litigation of the case rather than the proposed settlement.

Having overruled Janvrin's and Olson's objections, the Court approves the settlement between the County and Toomey.

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The County's Motion for Approval of a Settlement (ECF No. 45) is **GRANTED**;

2. The settlement between the County and Toomey (ECF No. 45-3) is **APPROVED**;

3. All of Plaintiff's claims against the County are **DISMISSED WITH PREJUDICE**, without costs or disbursements to any party;

4. All of the County's crossclaims against Janvrin, Reiman, and Olson are **DISMISSED WITH PREJUDICE**, without costs or disbursements to any party; and

5.      This Order does not affect Toomey's claims against any of the named defendants other than the County or any non-County parties whom Toomey may subsequently join as parties, nor does it affect the rights, defenses, and claims that Janvrin, Reiman, and Olson may assert against Toomey or the County consistent with an ordinary *Pierringer* release.

Dated: March 2, 2026                           *s/Laura M. Provinzino*
                                                Laura M. Provinzino
                                                United States District Judge